UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:06-CV-75-H

**ROBERT LEWIS BAAR**  PLAINTIFF

V.

**JEFFERSON COUNTY BOARD OF**  DEFENDANTS
**EDUCATION, et al.**

**MEMORANDUM OPINION**

  Plaintiff, Robert Baar, is a high school science teacher for the Jefferson County Public Schools ("JCPS"), who brought this suit challenging the constitutionality of certain disciplinary actions taken against him. Defendants are as follows: (1) The Jefferson County Board of Education ("JCBE"); (2) Stephen W. Daeschner, former superintendent of JCPS; (3) Carolyn Meredith, the Director of Employee Relations for JCPS; (4) Melissa Payne, another science teacher with JCPS; (5) Marsha Dohn, principal of Jeffersontown High School; (6) Minor Daniels, former Executive Director of Business Affairs for JCPS; and (7) James Jury, principal at Ballard High School. Plaintiff has sued all of the individual defendants both in their official and individual capacities, seeking both injunctive relief and damages.

  The current motions are before this Court after a remand from the Sixth Circuit. Defendants did not raise the particular defense of qualified immunity by motion prior to the just completed appeal. However, the timing of the Court's consideration of these issues does not appear in any way to diminish their validity or the necessity that the Court consider them. Now, Defendants have moved for summary judgment on a variety of grounds, most particularly based upon the doctrine of qualified immunity.

1

**I.**

A more detailed discussion of the facts surrounding this case can be found in the Court's previous opinions. For purposes of the present motion, the following facts and procedural history are relevant.

In early February 2002, Plaintiff was teaching at Jeffersontown High School and sent a letter to Defendant Payne, another Jeffersontown High School teacher, that Payne interpreted as threatening. Following Payne's complaints to Defendant Meredith, Plaintiff and several defendants entered a memorandum of understanding requiring Plaintiff to have no further communication, written or verbal, with Payne. Plaintiff abided by the agreement until September 23, 2005, when he emailed Payne to RSVP that he would be attending the next meeting of the Louisville Area Chemistry Alliance ("LACA"), a group of local chemistry teachers that Plaintiff had co-founded and regularly met with until 2001.[1] Although Payne was the designated contact person for the LACA meeting, she reported Plaintiff to Defendants Dohn, her then principal, and Meredith. As a result of this communication and Plaintiff's unwillingness to refrain from attending the meeting, Plaintiff was given a formal reprimand by Defendant Jury, Plaintiff's then superior. That formal reprimand required Plaintiff abide by the 2002 memorandum of understanding and prohibited Plaintiff from attending any future LACA meetings.

Plaintiff's lawsuit eventually followed. After extensive discovery and motion practice, on February 8, 2008, this Court granted Defendants' motion for summary judgment on all

---

[1] Plaintiff voluntarily stopped attending LACA meetings from sometime in 2001 to the 2005 meeting in question.

claims. Plaintiff appealed. The Sixth Circuit affirmed on all issues except Plaintiff's First Amendment claim that James Jury violated his right to freedom of association by prohibiting him from attending all future LACA meetings. The Sixth Circuit Court of Appeals reversed as to this claim, finding that the breadth of the ban did, indeed, violate Plaintiff's free association rights. After that ruling, Jury removed the ban on attending LACA meetings on March 2, 2009.

After remand, this Court set a trial date for the earliest convenient date. Soon afterwards, Defendants filed various dispositive motions addressing all remaining parties and claims. The Court has yet to address any of these issues. The Court will identify and consider each relevant issue in turn.

## II.

Defendants first move for summary judgment on Plaintiff's remaining damages claim against the individual defendants in their official capacities because such claims are the equivalent of suing the JCBE. Suing a government officer in her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n.55 (1978)). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* (citing *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985)).

Here, all of the individual defendants are employees of the JCBE. Because the JCBE was named as a Defendant, it certainly received notice of the suit and an opportunity to respond appropriately. Consequently, the correct result is quite clear. All claims against the individual

defendants in their official capacity are properly claims against the JCBE. *See Doe v. Wigginton*, 21 F.3d 733, 736-37 (6th Cir. 1994) ("Because a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself, the state is the real, substantial party in interest . . .") (citations and quotation omitted)); *Clark v. Kentucky*, 229 F.Supp.2d 718, 721-22 (E.D.Ky. 2002) (dismissing official-capacity defendants where the governmental entity had been sued directly); *Meredith v. Jefferson County Bd. Of Educ.*, No. 3:02-CV-620-H, 2007 WL 3342258, at *2 (W.D.Ky. Nov. 9, 2007) ("Thus, JCBE as the government entity that employed Superintendent Berman is the only true defendant in this case."). The official-capacity claims should be dismissed.

### III.

Next, Defendants move for summary judgment on all claims against Defendants Dohn, Payne, Daeschner, and Daniels because those defendants did not participate in issuing the relevant 2005 reprimand. Now that the issues before the Court are narrowed to one claim of unconstitutional behavior, it is appropriate to address each of these Defendants' role in those acts. For the following reasons, the Court finds that the evidence does not sustain a claim against these Defendants on the remaining charge.

First, Payne is another teacher for JCPS. She has no authority over Plaintiff or Jury, the person responsible for the reprimand. Therefore, it is impossible for Payne to have any responsibility for the violation of Plaintiff's constitutional rights. Her only role in the events was to report the email that she received from Plaintiff. That limited role does not to give rise to any personal liability. In these circumstances, where one has no control over unconstitutional actions, there can be no liability held for damages resulting from another's actions. *See Shehee*

*v. Luttrell*, 199 F.3d 295, 300-01 (6th Cir. 1999) ("The defect in Shehee's claim is that neither Fleming nor Morgan were involved in his firing, the alleged adverse action. Despite Shehee's contention that Fleming and Morgan instigated his firing, these men did not have the ability to terminate Shehee from his commissary position. For this reason, Shehee simply does not set forth a valid First Amendment retaliation claim against Fleming or Morgan.").

The same is true of Defendant Dohn. While Dohn was Plaintiff's superior in 2002, she was not his superior in 2005 when the unconstitutional reprimand occurred. For this reason and others, Dohn did not exercise any authority to require a reprimand or to instruct Jury how to reprimand Plaintiff. Therefore, while Dohn may have reported the email to other JCBE employees and requested that action be taken, Dohn cannot be responsible for the specifics of the eventual reprimand. *See id.*

While Defendants Daeschner and Daniels[2] were Jury's superiors and, in theory, could have directed Jury's actions, there is no evidence that either did. Therefore, they cannot be liable as the primary wrongdoer in this case. Personal liability of supervisory personnel "must be based on more than merely the right to control employees. Without more, such a theory would allow liability on a respondeat superior basis - a basis expressly rejected by the Supreme Court in *Monell v. Dep't of Soc. Services*, 436 U.S. 658 (1978)." *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 872 (6th Cir. 1982). In essence, there must be "a showing that the official either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* at 874.

---

[2] Defendant Daniels unfortunately passed away on July 6, 2008. Although it is unclear whether Plaintiff intends to proceed against Daniels' estate, the Court will assume that he does.

5

With discovery complete, there is no such showing in the evidence.

As for Daniels, Plaintiff does not offer any evidence connecting him to the 2005 reprimand or explaining why he should be liable. Daniels' only involvement in this case appears to be his investigation of the original incident between Payne and Plaintiff in 2002. As for Daeschner, Plaintiff asserts Daeschner's deposition shows that he takes full responsibility for all actions of his employees, which would clearly include Jury. However, this is merely the blanket response of a superior that is indicative of the respondeat superior theory generally. As a matter of law, this statement alone is an insufficient basis for Daeschner's personal liability in this case.

Plaintiff points the Court to *Leary v. Daeschner* ("*Leary I*"), 228 F.3d 729 (6th Cir. 2000), and *Leary v. Daeschner* ("*Leary II*"), 349 F.3d 888 (6th Cir. 2003), as evidence that Daeschner may be held personally liable. Those cases presented a different circumstance. There, the question was whether the superintendent could be held liable for an unconstitutional transfer of teachers. The Sixth Circuit made clear that "[m]erely having the right to control employees is not enough, nor is merely being aware of the misconduct." *Leary I*, 228 F.3d at 740 (citations omitted). It found that the superintendent could be liable precisely, because he actually was "primarily responsible for approving the transfer of teachers," the allegedly unconstitutional action. *Id.* To the contrary, there is neither an allegation nor evidence suggesting that Daeschner was primarily responsible for giving or approving of the unconstitutional reprimand here.[3]

---

[3] While it is true that Daeschner was responsible for transmitting the reprimand to the Education Professional Standards Board ("EPSB"), such transmittal is not the subject of this lawsuit on remand. Rather, the only unconstitutional act was the reprimand itself. While it may be contended that his transmittal of the reprimand showed Daeschner's knowledge of the unconstitutional acts and his failure to do anything was the same as knowing acquiescence, such a contention is false. In *Shehee v. Luttrell*, 199 F.3d 295 (6th Cir. 1999), the court found that where a supervisor had knowledge of the allegedly unconstitutional actions and did not act to change them, there

**IV.**

Defendants have also moved for summary judgment against all individual defendants on the basis of qualified immunity.[4] Qualified immunity, if it applies, will act to bar all damages claims against the individual defendants in their individual capacities. It will not effect, however, injunctive relief.

A.

Plaintiff has not raised waiver in opposition to Defendants' defense of qualified immunity. Nevertheless, the Court will consider the question in all fairness.[5] "Since immunity must be affirmatively pleaded, it follows that failure to do so can work a waiver of the defense. The defense is subject to the same procedural rules as other defenses." *English v. Dyke*, 23 F.3d 1086, 1090 (6th Cir. 1994). Here, Defendants pleaded, "Seventh Defense: Some or all of Plaintiff's claims are barred by immunity and/or Plaintiff's failure to name an indispensable party." (Answer 4.) Since filing this answer and through the appeal, Defendants did not move for dismissal on the grounds of immunity. The Sixth Circuit has said that

> the trial court has discretion to find a waiver [of qualified immunity] if a defendant fails to assert the defense within time limits set by the court or if the court otherwise finds that a defendant has failed to exercise due diligence or has asserted the defense for dilatory purposes. Such a waiver, however, need not waive the defense for all purposes but would generally only waive the defense for the stage at which the defense should have been asserted.

---

was no liability on the part of the supervisor. "[L]iability under § 1983 must be based on active unconstitutional behavior and cannot be based upon a mere failure to act." *Id.* at 300. Therefore, Daeschner's role in transmitting the reprimand to EPSB does not give rise to personal liability for the reprimand.

[4] While the Court has already dismissed Defendants Payne, Dohn, Daniels and Daeschner, it should be noted that the analysis for qualified immunity applies equally to those defendants.

[5] Perhaps Plaintiff has "waived" the waiver argument. Regardless, the Court believes that it is best to address all issues directly. No matter the result, an appeal will follow (either direct or interlocutory), which will postpone the scheduled trial.

*English*, 23 F.3d at 1090.

The Court addresses this issue largely because of the stage in the proceedings at which this motion arises. The case was filed in 2006; extensive discovery followed; summary judgment granted; and then reversal on appeal. Only now has Defendant raised the defense by motion. Having obtained a judgment from the Sixth Circuit that his rights were violated, it may seem difficult for this Court now to consider dismissing Plaintiff's claim on other grounds. However, it is now only for this Court to determine whether a motion can be heard and the validity of the motion. The Court, thus, turns to those issues.

In other circuits, defendants who fail to assert qualified immunity until after an appeal face waiver of the defense. *See Sales v. Grant*, 224 F.3d 293, 296-97 (4th Cir. 2000) (finding that the defendants waived qualified immunity by failing to pursue it prior to remand even though the defendants technically pled "immunity" in their answer); *Maul v. Constan*, 928 F.2d 784 (7th Cir. 1991) (holding the same). However, the Sixth Circuit has held that even where there is a waiver of qualified immunity at one stage of the litigation, it is not necessarily waived for all future stages. *English*, 23 F.3d at 1090 (citing *Kennedy v. City of Cleveland*, 797 F.2d 297, 300-01 (6th Cir. 1986)); *Abel v. Harp*, 278 Fed. Appx. 642, 648 (6th Cir. 2008) (finding that the defendant did not waive qualified immunity by failing to assert it in his pre-answer motion to dismiss that was granted and then asserting it for the first time on remand). The proceedings are at a new stage and the defense was asserted within a reasonable time of the case being remanded to this Court.

The case of *Brown v. Crowley*, 312 F.3d 782 (6th Cir. 2002) is instructive. There, the defendant initially moved to dismiss based on qualified immunity, but the trial court denied that

motion because material facts were disputed. Subsequently, the defendant moved for summary judgment on grounds other than qualified immunity. After the district court granted that motion, the plaintiff successfully appealed. While the Sixth Circuit refused to consider qualified immunity on the initial appeal because it was not included in the motion for summary judgment, it did state, "the judgment of the district court must be vacated and the case remanded for further proceedings, because the district court erred in its application of the law to Brown's retaliation claim. *The defendants will thus be free to reassert their immunity defenses in the district court*." *Id.* at 788 (citing *English*, 23 F.3d at 1090) (emphasis added). Similarly, here Defendants raised qualified immunity in their answer but not in their initial motion for summary judgment. Nevertheless, the Sixth Circuit did not conclude that Defendants had waived the defense.

Had Defendants filed a motion to dismiss prior to discovery as the *Brown* defendants did, it is likely the Court would have denied the motion because of factual disputes. Further, the case originally contained multiple claims to which qualified immunity may or may not have applied. At this stage in the proceedings, the issue is much narrower. Thus, the Court finds that Defendants' motives in waiting to make this motion were not improper. As evidenced by *Brown*, the circumstances here are not unusual. It is appropriate for the Court to consider the motion.

B.

"Qualified immunity is an affirmative defense that extends to government officials performing discretionary functions." *Shehee v. Luttrell*, 199 F.3d 295, 299 (6th Cir. 1999) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982)). As the Sixth Circuit explained, "[u]nder this judicially created exception, government officials are immune from civil liability

9

when acting in an official capacity if their actions do not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.*(quoting *Harlow*, 457 U.S. at 818).

The first question, then, is whether James Jury and Carolyn Meredith acted in a discretionary manner when they prohibited Plaintiff from attending future LACA events. Clearly, they did. When developing the punishment, they did not follow any simple procedure or standard punishment policy. Rather, Jury and Meredith crafted a punishment they believed appropriate to the particular circumstances. Courts routinely hold that developing a punishment is the type of behavior to which qualified immunity applies. *See, e.g., McCullough v. Wyandanch Union Free School District*, 187 F.3d 272 (2d Cir. 1999) (applying qualified immunity where a teacher was terminated in violation of his free speech rights); *Lytte v. Wondrash*, 182 F.3d 1083 (9th Cir. 1999) (applying qualified immunity where teacher was terminated for his negative statements about the school district). The same logic applies to the actions of Jury and Meredith here.

C.

Now the Court must address the particular elements of qualified immunity. The Sixth Circuit has applied "a two-part test to determine whether a government official is entitled to the defense of qualified immunity: (1) whether the plaintiff has shown a violation of a constitutionally protected right; and, if so, (2) whether that right was clearly established such that a reasonable official would have understood that his behavior violated that right." *Shehee*, 199 F.3d at 300-01.

Here, the Sixth Circuit has effectively answered the first question as " yes," as a matter of

law. Plaintiff has shown a violation of a constitutionally protected right. The only remaining question is whether Plaintiff's right to attend future LACA events was "clearly established such that a reasonable official would have understood that [banning Plaintiff from such events] violated that right." *Id.*

Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law. . . . [If] officers of reasonable competence could disagree on the issue [of constitutionality], immunity should be required." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The Sixth Circuit has further clarified the broad reach of qualified immunity.

> [I]n the ordinary instance, to find a clearly established constitutional right, a district court must find binding precedent by the Supreme Court, its court of appeals or itself. In an extraordinary case, it may be possible for the decisions of other courts to clearly establish a principle of law. For the decisions of other courts to provide such "clearly established law," these decisions must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting.

*Williams v. Commonwealth of Kentucky*, 24 F.3d 1526, 1533 (6th Cir. 1994) (quoting *Ohio Civil Serv. Employees Ass'n v. Seiter*, 858 F.2d 1171, 1177 (6th Cir. 1988)).

Here, no one disputes the clear constitutional right to the freedom of association in the abstract. However, the Court's inquiry is not so limited. It must ask whether a reasonable school official would have understood that banning Plaintiff from attending future LACA meetings as a punishment for his violation of the memorandum of understanding, violated Plaintiff's clearly established right to free association in those circumstances. *See, e.g., Nicklas v. Eagle*, 45 Fed. Appx. 385 (6th Cir. 2002) (focusing on whether the specific actions violated the plaintiff's broader First Amendment rights); *Lewis v. Cowen*, 165 F.3d 154, 166-67 (2d Cir. 1999) ("The relevant inquiry is not whether the defendants should have known that there was a

11

federal right, in the abstract, to 'freedom of speech,' but whether the defendants should have known that the specific actions complained of violated the plaintiff's freedom of speech. Such an inquiry requires that a court define the constitutional right with some specificity."). The Sixth Circuit recently affirmed a district court's grant of qualified immunity under similar circumstances where the trial court employed the following test:

> [I]f an employer in the position of the defendants at the time of the adverse job action, measured objectively, could have disagreed as to (1) whether and to what extent the speech was a matter of public concern, and (2) where the *Pickering* scale, with all of the parties' competing interests in the balance, would ultimately come to rest, then the protection of qualified immunity should be granted.

*Akridge v. Wilkinson*, 178 Fed. Appx. 474, 481 (6th Cir. 2006).

The Court finds that reasonable officials in Jury's position could have disagreed about whether Plaintiff's attendance at LACA meetings was a matter of public concern. In fact, this Court previously found that the LACA meetings were not a matter of public concern.[6] While the Sixth Circuit reversed the Court on that issue, the Sixth Circuit noted that this was not the quintessential example of public concern speech. *Baar v. Jefferson County Bd. of Educ.*, 311 Fed. Appx. 817, 822 (6th Cir. 2009). Moreover, LACA appears to deal only with private, teacher-related issues. It is only tangentially a matter of public concern; the meetings to make better teachers will be beneficial to the general public. *Id.* The Sixth Circuit pointed to no cases that were analogous to this one and the Court has found none. Thus, prior to the Sixth Circuit deciding these particular facts by its opinion in *Baar*, no clear guidance existed. Reasonable officials could certainly have disagreed on whether attendance at LACA meetings was a matter

---

[6] The Court's prior opinion clearly details why it found LACA meetings were non-public concern matters. These reasons are equally applicable to why reasonable officials could disagree about the nature of the meetings.

of public concern.

Moreover, the *Pickering* balancing test is a complicated one. It requires a comparing of the government's interests against Plaintiff's interest. As the Sixth Circuit stated, the JCBE "has a substantial interest in curbing Baar's improper communications with Payne, which ran the risk of compromising the school board's ability to deliver a valuable education in an harassment-free work environment." *Id.* at 823. In fact, the Sixth Circuit indicated that it was merely the breadth of the ban on LACA meetings that "tips the scale in Baar's favor." *Id.* Finally, the court noted, "No doubt, a prohibition on Baar's involvement with LACA is one way to prevent Baar from communicating with Payne . . ." *Id.* Given the complexity of the balancing test and the strength of the JCBE's interest, reasonable officials could absolutely disagree as to whether the 2005 reprimand was unconstitutional. *See Akridge*, 178 Fed. Appx. at 481 (affirming summary judgment on qualified immunity grounds where the *Pickering* balancing test was not clear).

Because Plaintiff's right to attend the LACA meetings was not clearly established at the time of Jury's reprimand, all of the individual defendants should be entitled to qualified immunity on the damages claim.

## V.

With respect to damages, the only remaining defendant is the JCBE. However, the Supreme Court has limited the liability of a school district for damages under a § 1983 claim. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978). As the Sixth Circuit later observed,

> Since *Monell v. New York City Dept. of Social Services*, it has been established that local governing bodies are "persons" within the meaning of [§ 1983]. While such a body is not liable under respondent superior for an employee or officer's acts, it may be sued for having caused a constitutional tort through "a policy statement,

13

> ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Since such bodies can act only through natural persons, the critical question is whether the person committing the act did so pursuant to official policy. A formally adopted policy is not required; established usage or custom may be sufficient.

*Adkins v. Bd. of Educ. of Magoffin County, Ky.* 982 F.2d 952, 957 (6th Cir. 1993). There is no contention that Jury acted "pursuant to official policy" when deciding to ban Plaintiff from future LACA meetings. Thus, the school board itself cannot be liable for his actions under the basic test from *Monell*.

However, the actions of a single official can create liability for the government where that official has "final policymaking authority." *Id.* "[W]hether an official has such final authority is a question of state law." *Id.* (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988)). In *Adkins*, the Sixth Circuit was confronted with a superintendent's decision not to recommend a secretary for contract renewal because she would be working for her husband. While the Court found that this presented a constitutional violation as it infringed upon the secretary's right to privacy in intimate relationships, the Court also found that the school board itself was not liable. Under Kentucky state law, the school board itself made all final decisions relating to personnel hiring and firing. While it was true that the superintendent had to recommend a candidate for the school board to consider the candidate, the Court nevertheless found that the school board, not the superintendent, had "final policymaking authority." *Id.* at 959. Therefore, the Court dismissed the claims against the school board, holding that they were not liable under *Monell*. *Id.*

In light of *Adkins*, the result here is clear. The Court has found no state law placing final

14

policymaking authority over teacher discipline in principals or human relations managers.[7] All state laws appear to vest employee policy decisions in the school board or the superintendent. *See* KRS §§ 161.790, 160.370 & 160.340. While it may be true that Defendant Daeschner was eventually made aware of the reprimand and did not remove it, such a failure to act does not give rise to school board liability. *See Adkins*, 982 F.2d at 958 ("The fact that the Board did not question Whitaker's decision to not recommend employment for Mrs. Adkins is immaterial. The plurality opinion in *Praprotnik* addressed this question: 'Simply going along with discretionary decisions made by one's subordinates, however, is not a delegation to them of the authority to make policy.'"). Therefore, the unconstitutional acts involved in this case were not made by final policymakers and cannot give rise to school board liability.

## VI.

The only remaining substantive issue is the availability of injunctive relief. While it is true that Defendants have voluntarily lifted the ban on Plaintiff's attendance at future LACA events, plaintiff remains entitled to a judgment from this Court for equitable relief to ensure that such a ban is not instituted again. The Sixth Circuit found that Plaintiff's attendance at the LACA meetings is a matter of public concern. *Baar*, 311 Fed. Appx. at 822. Moreover, the court found that Plaintiff's claim also meets the *Pickering* analysis. *Id.* at 822-23. Defendants have offered no new evidence to change that conclusion. Therefore, the Court finds as a matter of law that Defendants' ban on Plaintiff's attendance at future LACA meetings was unconstitutional and the Court will enter injunctive relief ordering Defendants not to re-institute

---

[7] The only defendants involved in the decision of how to reprimand Plaintiff were Jury (a principal) and Meredith (the human relations manager).

such a ban against Plaintiff.

## VII.

The Court notes that the parties have not had occasion to brief some of the issues decided in this opinion.  In fairness, the Court will allow the parties fifteen days to file opposition to any portion of this opinion.   After the Court has considered the issues and arguments which these memoranda raise, it will allow Plaintiff some additional time to file a motion for attorney's fees, if appropriate.  Thereafter, the Court would intend to issue a final and appealable order.

The Court will issue an order consistent with this Memorandum Opinion.


cc:      Counsel of Record